Hear ye, hear ye, this Honorable Appellate Court of the 2nd Judicial District is now back in session. The Honorable Anne P. Morganson presiding. Please be seated. Marshal, please call the case. Yes, ma'am. Your Honors, the third case on the docket this morning is 2-22-0190. The people of the state of Illinois claim to have believed the Matthew P. Brennan defendant, Appellate. Arguing on behalf of the appellant, Ms. Elizabeth A. Bonner. Also arguing on behalf of the appellant, Ms. Grace Murphy. Arguing on behalf of the appellee, Ms. Victoria P. Joseph. Okay. Are all three of you ready to proceed? Yes. Counsel, then, when you're ready. My name is Elizabeth Boddy from DePaul's Criminal Appeals Clinic. I represent the appellant, Matthew Brennan. I'm also the attorney who's supervising our 711 student, Ms. Grace Murphy, who will be arguing the substantive merits of our appeal. And you're going to argue jurisdiction. Just jurisdiction. Just jurisdiction. And you received this motion from the state, which asked to cite additional authority. It's really not additional authority, but just stating that count two, we don't have any jurisdiction over count two because it is not a lesser included, basically. I think the state's position is that this court lacks jurisdiction because Matthew was not sentenced on count two. Count two merged into count one. And because the notice of appeal does not specifically list count two. Nonetheless, this court has jurisdiction for two main reasons. One, if this court reverses count one due to the insufficiency of the evidence, it can entertain jurisdiction to reverse count two, which is related to count one, or at least remand the cause to the circuit court with directions for the circuit court to vacate count two. And the authority for that comes from Peeble v. Dixon, Peeble v. Relaford, and Supreme Court Rule 615B. But in those cases, they were lesser included offenses, weren't they? In those cases, the lesser offenses merged. Merged into that. And that's what we have here. The court said if the offenses are intimately related and if the unsentenced offense is dependent on the first offense, then this court can entertain jurisdiction. In those cases, it was to reinstate the lesser offense and to order sentencing on the lesser offense. In Peeble v. Ford, the appellate court exercises jurisdiction after reversing one offense that the defendant was sentenced on. It exercises jurisdiction to reverse the related offense that the defendant was not sentenced on. But the defendant was only sentenced on count one. He was sentenced on count one, count three. And three. Yeah, on count three. They merged count two and only sentenced on count one. Right, because the judge appropriately recognized that he could not be sentenced on both without violating the One Act One Crime Adoption. Count one and count two are basically the same. Count one alleged that Matthew, on or about June 5th, committed the offense of child abduction by intentionally violating the terms of a June 4th court order mandating the return of his kids to his ex-wife. Count two alleged that on or about June 5th, Matthew committed the offense of child abduction by intentionally failing to return his children after the expiration of his parental time, which was based on the June 4th court order, June 4th. So the offenses are basically the same. How do you respond to the Caballero case that the state cites? See, Caballero and its progeny, they don't apply. Because my position is Dixon and Rutherford and 615.1b authorize this court to entertain jurisdiction if it reverses count one. But there was no sentence imposed on count two. Correct. And the same holds true with Dixon and Rutherford and 4th. There was no sentence imposed on that un-sentenced offense. Nonetheless, the court was able to entertain jurisdiction to either reinstate that offense in order of resentencing thereon or to reverse that offense. In Rutherford, the Supreme Court reaffirmed the rule in Caballero and said Dixon must be read very narrowly. Correct. And Rutherford distinguished Dixon on grounds that in Rutherford it was unclear why the judge failed to impose sentence on the un-sentenced offense. Here we know why the judge didn't. He couldn't. Because they're basically the same offense. He can't be convicted of two offenses based on the same predicate act. If we vacated the conviction on count one, we can remain to be resentenced on count two, correct? You can't. If the evidence is insufficient to sustain count one, the evidence is insufficient to sustain count two because they're the same. They have the same elements. They implicate the same facts, the same defense. So that's what it follows. If the state's evidence is insufficient to sustain one, it's insufficient to sustain count two. So this court can't reinstate count two in order of sentencing that. And if it does that, it's a complete waste of judicial resources and unfair to Matthew to be saddled with this bogus conviction. If we know the evidence is insufficient to sustain count two, it would be a waste of judicial resources to send it back and then to give him the opportunity then to appeal it again, knowing that he's going to win, which could take several years. In conclusion, I know that my time is up. I also want to briefly state that the notice of appeal here independently confers jurisdiction, notwithstanding our argument related to Dixon and McFarland. Thank you. Thank you. Thank you. Ms. Murphy? Good morning, Your Honors, and may it please the Court. My name is Grace Murphy. I'm a 711 law student from DePaul University College of Law's Advanced Criminal Appeals Clinic, and I'm here today representing the defendant appellant, Mr. Matthew Brennan. If it is all right with the Court, I would like to focus my argument on the first two issues. However, I am more than happy to answer any questions that the Court may have on the remaining two issues. Okay. As to the first issue, Matthew was found guilty of three felony offenses, two of which are based on a vague court order that Matthew attempted to comply with. The State failed to prove beyond a reasonable doubt that Matthew violated the court order, and as to count three, the July 12th or July 14th, I apologize, Your Honors, date, the first count deals with the intentional violation of a valid court order that was issued on June 4th, 2020, by LaSalle County. The State, however, failed to prove that Matthew intentionally violated the court order when the court order was vague and he acted consistently with the order. On May 22nd, Ms. McCann filed an emergency motion, notably with an address listed differently than the one she was currently residing at. On June 4th, that's when the court entered the order, and the order stated, and I'm paraphrasing here, Your Honors, just so I don't read out the entire order, but that Matthew Brennan was to immediately turn over the children or return them to Ms. McCann upon presentation of the order. And he was served with the order? Yes, Your Honor. The next day, it was entered June 4th, and he was served by the Minnesota police on June 5th. Did he not say that he deemed that order not acceptable in Minnesota? Your Honor, Matthew did testify that an officer told him that these, I believe it was papers, were not deemed acceptable in Minnesota. Upon receiving this order, it was around 3.45 p.m. on June 5th, he also received a copy of the Dissolution of Marriage Judgment and Tara's emergency petition that she had filed back in May. As the state explains in their brief, child abduction under subsection B-1 requires a defendant to fail to perform an affirmative duty. However, the court did not define Mr. Brennan's affirmative duty, nor did it define the terms of compliance with this order. Was it clear about that order? The order only stated that he was to immediately return the children upon presentation of the order. However, Ms. McCann was not present. In fact, as Matthew said in a text message to Tara and he said to the police officers, okay, where is Tara? She was not in Minnesota on that day. You texted back and forth, correct, about how to exchange the children? Yes, Your Honor, and this is a little bit of vagueness in the record here. Matthew testified or Matthew told the officer, Officer Myers, who then later testified in the trial that he had issues communicating with Tara. He was replying back to Tara earlier that day before he was served. Tara said, hey, I need your e-mail address so we can initiate a return. He sent it back. She continued to reply as if she wasn't receiving his messages. However, Matthew here could not just hand the children over. The Minnesota police were not going to drive the children 8 to 9 hours from Glenwood, Minnesota, back to their home in Yorkville. So she went to Minnesota on June 7th, correct? Correct, Your Honor. Where was he? He, at that time, was in Wisconsin. He had notified the police officers he was going to Wisconsin, but the fact that she was in Minnesota is inconsequential here. She never told Matthew, there is no evidence that she told Matthew that she was in Minnesota. She did not testify that she told Matthew, which further substantiates Matthew's testimony that he was unaware that she was in Minnesota on that day. Did he have permission to keep the kids there, ma'am? Your Honor, again, vagueness in the record. Originally, his parenting time was to expire March 29th after spring break. However, there is no evidence of what communications that clearly were being had between the 29th up until when Tara filed an emergency motion. What can you point to that would make a reasonable person think that the visitation extended beyond March 29th? Well, Your Honor, March 29th here shouldn't even be discussed, as the State chose to charge Matthew with violating or not returning the children in violation of a valid court order on or about June 5th. Correct. My point is that's well after March 29th. Correct, Your Honor. But if the State wanted to charge him with, that would actually be B-5, of not returning the children beyond the expiration of parenting time outside of the State of Illinois on March 29th, they could have done so. But they chose to charge him with on or about June 5th violating this court order. When the order was entered. Correct, which was on June 4th. So by law, his parenting time ended June 4th or when he was served with the order, obviously, June 5th. Let me ask you this. Is it a problem? Do you believe it's a problem that the trial court found Matthew not credible? Well, Your Honor, regardless of Matthew's credibility, it is my position that we still win here on count one  Tara herself in the text messages, and I quote, said, Glenwood PD has and Officer Olson is in agreement that you prove that you are communicating with me. Additionally, he followed the court order. He told the police officers in Minnesota, hey, I'm communicating with Tara and here's where I'm going to go. Hence why the children were amicably exchanged just three days later on June 8th in Wisconsin. Your Honor, we are talking about a felony here. A reasonable person would not know what else to do in this situation. Where a dad is served with a court order to hand his children over to mom, but mom's not there. Mom's eight to ten hours away, depending on the route you take. Any reasonable parent would have done what Matthew did here. Contact mom, contact the police, and he testified that he contacted his attorney. As I stated, if anything, Matthew followed the court order. The court order is way too vague to hold Matthew liable of a felony here. And one cannot intentionally violate a vague court order. The state's failure to prove count one also shows the state's failure to prove count two, which involved Matthew's failure to return the children to Ms. McCann after the expiration of his visitation rights on or about June 5th. The charging instrument, again, read on or about June 5th. The children were returned amicably three days later. That is not in dispute here. So if they're returned amicably three days past the time, actually in this case, much past the time they were supposed to, then it's new, it doesn't matter, you don't charge them? If they hadn't gotten an order, would he ever return them? Your Honor, I can't answer a question that's not in the record. I don't want to misrepresent any facts to this court. Is it likely, as a reasonable, I think we can make a reasonable inference, is it likely that he would have returned those kids had she not gotten a court order? Making a reasonable inference, Your Honor, is all dependent on Ms. McCann's personal state at that point in time. As we'll get to here in count three, she was intoxicated when she was supposed to pick up the children. That was the second time. Correct, that was the July 12th incident, the count three incident. But again, I do not want to put my own personal opinion. Is there anything written into the statute that immediately encompasses a three-day grace period? No, Your Honor, but I do think that the on or about language in the indictment would encompass a few days, a few days of a little bit of a grace period there. And McCann could not return the children on June 5th, the date he was charged with. He was prevented from doing so. If Tara was in Minnesota, well, if she showed up with the kids... How could the children get to Minnesota? I mean, had he stayed in Yorkville, he would have been quite able to return the children immediately. Correct, Your Honor, but he, per the dissolution of marriage judgment, they were to meet halfway when the kids were going to stay with him in Minnesota. He was allowed to take the kids to Minnesota in this instance at the start of spring break. No, wasn't this, wasn't he supposed to, oh, that was at the father's day, wasn't he supposed to stay? Yes, yes, Your Honor. Here, though, he was, he, despite the language in the dissolution of marriage order or judgment, I apologize, he was able to take the children to Minnesota. He drove all the way to Yorkville, picked them up. So had Tara been in Minnesota with the police officers when he was served, he could have handed the children over. But he simply could not return the children on June 5th. He could have returned on March 29th, could he not? Your Honor, again, vagueness in the record. I do not want to put in any opinion on that when there is no evidence in the record. Did you raise the essential elements in your opening brief? The essential elements of the court order? Yes, we did, Your Honor. However, we're not disputing that. It is not our position that the court order was not valid. It was our position that the state failed to prove that Matthew knew of the terms of compliance of the court order. And as to count three, this is about Matthew's failure to return the children on or about July 14th. When did he return them? Your Honor, the state, or I apologize, not the state, the children were returned around September 26th. But that is because after this July 12th date. Which date was it? I believe it was September 26th, Your Honor, that they were returned. But this is because Matthew filed custodial proceedings in Minnesota following the July 12th incident. So Matthew picked up the children June 21st. He was allowed to have three weeks of parenting time during the summer. They were not to be consecutive, correct? That is what the dissolution of marriage judgment says, yes, Your Honor. However, it is clear as Matthew picking up the children for spring break when they're supposed to meet halfway, the parties did not always follow the exact terms of that dissolution. So July 12th, exactly three weeks later, from June 21st, Matthew testified that he drove to the halfway point that Tara and him had agreed upon. And she texts him, and I quote, OMG, drank. Don't know anything anymore. Matthew replied back the next day confirming that they were supposed to meet on July 12th. He explained in that text message that his main concern was for the safety of his daughters. And that, and I quote, yesterday was the day we agreed on. You even spoke to our daughter. I'm not just for, she's a minor, Your Honor, so I'm going to say DB, about it. The representative here could not be established. He did not intentionally fail to return the children. He physically could not do so, Your Honors. He didn't do so the next day or the day after that or the day after that or any time into September. However, as to this count, it is clear that his parenting time did not even end on July 14th where the state charged him. In writing, in the text messages that are in the exhibits and in evidence, Tara extended the time to July 17th and again extended the time to July 20th. So if anything, his parenting time would have ended on July 20th, not July 14th. However, given the situation that happened on July 12th, that's when Matthew decided that he wanted to file for custodial proceedings in Minnesota. So if you file for custodial proceedings, you just get to keep the kids? Your Honor, again, vagueness in the record. Matthew was concerned for the safety of his daughters. I'm going to ask you the question again. If you file for custodial proceedings, do you get to keep the kids and disregard the marital settlement agreement or the divorce decree? Your Honor, in usual circumstances, no. However, in a situation like this where he is fearful for the safety of his daughters. Is there any exception like that written into the statute? No, Your Honor, not in the statute of B-1 or B-5. And that is 720-ILCS-510, B-1 and B-5. I apologize. But for those reasons, Your Honor, the State failed to prove Matthew guilty of child abduction beyond a reasonable doubt for all three counts. And as such, for the first issue, we asked this Court to reverse his convictions outright. As for the second issue, Mr. Brennan's constitutional right to present a defense was violated when the trial court prohibited the defense from calling Officer Meyer to petition Ms. McCann. Who was Officer Meyer going to impeach? Tara, mom. Was a correct foundation laid for Tara, for him to be impeached, for her to be impeached by him? Yes, Your Honor. It was our position that it was because his entire defense, number one, his entire defense to Counts 1 and 2 was the fact that Ms. McCann had blocked Matthew. That's not a dispute. But did he lay a foundation? Yes, Your Honor. In defense counsel, not only pointed to text messages where Tara blocked Matthew, also I believe it was on cross-examination or on recross, he asked were you in communication with Matthew or did you block Matthew? And the Court sustained the prosecution's objection. Again, I apologize. The Court sustained the prosecution's objection to the defense counsel asking if Tara communicated with Matthew on June 5th or 6th. If anything, that the Court sustaining the prosecution's objection here prevented the defense counsel from laying the proper foundation that the trial court later relied on and said, you know, there wasn't enough evidence to show that Tara actually blocked Matthew. And defense counsel did ask in cross, did you block Matthew? This is such a prejudicial issue here, Your Honor, as I just stated, the Court looked to the fact that there wasn't enough evidence to show that Tara had actually blocked Matthew. And this was Matthew's main defense to these first two counts. And if the Court does not have any further questions, I can briefly conclude. Yes. Do you have any questions, Justice McClaren? I think he's on mute, Your Honor. Hold on. You're mute. Can you? Yeah. I apologize. Justice McClaren, if you would start over. You were mute for a moment. As I understand your argument, you're saying that the fact that she blocked him was an affirmative defense to the fact that he had taken the children and hadn't returned them in accordance with either an MSA or an order of court. Is that correct? No, I'm not saying it's an affirmative defense, no. I am saying, though, that that was Matthew's defense to the charges in general. And it was prejudicial for the trial court to not allow for Officer Meyer, who was already testifying as a witness. He was already there at the trial in the courtroom. It wasn't as if they had to call another witness, bring them in, subpoena somebody else. He is an officer, and he was already there to testify. It is my position that the trial court not allowing and abusing his discretion and not allowing Officer Meyer to testify to a conversation that he had with Tara about blocking Matthew prejudiced Mr. Brennan. But did he lay the foundation, time, place, and circumstances? You say in your brief, oh, but Tara knew the time, place, and circumstances. It's not whether Tara knew, it's whether the police officer knew. Nobody laid that foundation, did they? Your Honor, I think that the foundation would have been laid, however, obviously, the trial court sustained the prosecution's objection. But in saying, did you communicate with Matthew on June 5th or 6th? And I believe, Your Honor, you're talking about the Smith requirements here, so that there's not an unfair surprise to the testifying witness. There is no unfair surprise here. Officer Meyer also was up there testifying about the incidents that occurred as to the dates in the three counts that were charged. Is that the question or the issue of whether or not the mother blocked the father? Whether or not it is either substantive or impeachment? And if it is substantive, how is it an admission against interest? Your Honor, it is our position that it's for impeachment purposes. She said, no, I did not block him, and she said, no, she wasn't in communication with him. So it was to impeach Tara's testimony, because ultimately, this was a battle of credibility when it came down to it. It was Matthew's word versus Tara's. And even had the trial court allowed for Tara to be impeached on these grounds, it could have further helped Matthew in his credibility contest for the entirety of the case. Did you raise this, or did he raise this in his post-trial motions? Your Honor, I do not believe so. It was forfeited, correct? Professor Boddy better answer that question. But to briefly conclude, unless Your Honors have any additional questions? Do you have any additional questions? I have no further questions. All right. Well, therefore, we ask this Honor report to reverse Matthew's convictions outright or, in the alternative, grant him a new trial. Thank you, Your Honors. Thank you. Thank you very much. Counsel? Good afternoon, Your Honors. I am Victoria Joseph for the people of the State of Illinois. May it please the Court. Counsel? Well, the jurisdictional issue, I realize that that was belatedly raised, and Justice Bowman would be turning in his grave that I did not notice it earlier, as that was the first lesson he taught me. However, we cannot waive issues of jurisdiction, and we cannot confer jurisdiction on this Court. Even notably in Cabell's footnote, this Court did not recognize the jurisdictional issue under rect appeal. Why is, as Ms. Lachey said, why does not this second count merge into the first count? How is it any different than a lesser included? Or why is it different than a lesser included? It was not a lesser included, Your Honor. It appears that the Court, I don't believe, made a statement on why it was merged. Presumably it found a one act, one crime violation and merged it. So, Your Honors, we fully briefed count two on the merits. We just wanted to bring the jurisdictional issue to your attention, as you do have an independent duty to check your jurisdiction on all the counts. Can I have a question? Yes. If the appellate court does not have jurisdiction over the second count, then would you agree that if we vacated or reversed the first count, that we could do nothing relative to the second count? In other words, we couldn't address the merits, nor could we reinstate it and remand it back for sentencing? Based on the discussion in Cabell, because it was a situation where it was a post-conviction petition raising ineffective assistance of counsel for not addressing the count in the direct appeal, that this Court found it would not have jurisdiction to consider the merits of that count in the direct appeal, and that's why there was no prejudice for failing to raise it. However, neither Cabell nor, I believe, Alaska, determined what happens if Your Honors reverse the conviction that was entered. It does make the most sense that it would go back to the trial court for consideration on count two, because the court did find him guilty on count two. But they need to impose the sentence before this court can act further on it. In order for us to remand it back to the trial court, would not the appellant defendant have the opportunity to file a petition for rehearing and raise the merits of the issue in the PFR and ask that there be a PFR granting granted, and before it's remanded back for their hearing on the merits, that you address or we address the merits? Of the jurisdictional issue, Your Honor? Is that what you're? That we would address the merits of the jurisdictional issue. Is that what you're asking in appeal? No, I'm saying that. In count two? If we are going to remand it back to the trial court, we are essentially exercising jurisdiction over that count. And if we are exercising jurisdiction over the count when supposedly this count is not before us because we lack jurisdiction, if we entered an order that indicated we had jurisdiction, then why couldn't the appellant file a petition for rehearing and ask that the appeal address or the totality of the decision address the merits of whether or not the defendant was guilty beyond a reasonable doubt of the second count? Because the inconsistency here is you're claiming that for purposes of appellate review insofar as the appellant is concerned, we don't have jurisdiction. But we do have jurisdiction insofar as what we're going to do with it thereafter. And normally when we don't have jurisdiction, we do one thing and one thing only. We dismiss. And insofar as the second issue with the notice of appeal only mentioning two convictions, that is normally what happens when something is not included in the notice of appeal. It's dismissed as to the count that's not included. Or the child in the termination case that's not included. But failing to put it in the notice of appeal is essentially, in my mind, a forfeiture or a waiver. It is not something that removes from us subject matter jurisdiction. Although the argument can be made we're a court of limited jurisdictions. It's academic, I think, for the most part anyway. I have no other questions. Thank you. You may proceed then if you wish. As far as the reasonable doubt arguments, it appears the defendant is skewing the sufficiency of the evidence standards. This court is looking at the evidence in light most favorable to the people. Can you sustain the convictions? The defendant cannot use the substantive evidence that Tara blocked his phone. That was not before the court. That is not before this court. As they have conceded, the most they could have done is impeached Tara. With her statement that she told an officer she blocked his phone. It still does not mean she actually blocked his phone. Nor was the foundation appropriately raised because the only context during the discussion about her blocking the phone was her statement that she had talked about it with a completely different officer in Minnesota, not Officer Meyer in Illinois. So there was not sufficient or that she even had a discussion with Officer Meyer at all. The foundation was not set. Let me ask you about the essential element argument. They didn't raise anything about the dates in their opening brief. He devoted a substantial amount of time in his reply brief to his argument that the dates in the indictments should be considered essential elements of the charged offenses. If he didn't do any of that in his opening brief, then it's forfeited. We do maintain that the dates are not essential elements. The elements of the statute describe the offense clearly. In 1B1, we have intentionally violating any terms of a valid court order granting sole or joint custody by concealing, detaining, or removing the child from the jurisdiction of the court and at the expiration of visiting rights outside of the state, intentionally fails or refuses to return the children to the lawful custodian in Illinois. Defending conceded that the parenting time ended on March 29th. That's the time that is essential to that charge. He talks about the improper other crimes evidence. Is that, are those dates other crimes evidence or was it an ongoing? It was an ongoing from the moment he held them over from the expiration of his parenting time in both instances. As far as most of his complaints seem to be couched in his failing to comply with returning the children because of what Tara did or didn't do. Tara is not on trial here. It's the defendant's actions or inactions that we are considering. Is Tara a party opponent here? No, she is not, Your Honor. The party opponent is the state of Illinois. She is a witness for the state of Illinois. And his complaints about what Tara did or didn't do also undermines the entire purpose of the child abduction statute which is to avoid self-remedies and showing up and reclaiming the children. And that she should have gone against the law and the judicial process and her failure to do so suddenly absolves him of his intentional acts. I think the most critical showing that he was intentionally violating the June 4th order was the fact that she did make a request for a return of the children on an earlier date and he responded, I'm not giving up at 530 a.m. That is an intentional decision on his part because it was not convenient to him. It is not fulfilling immediately return. The terms of the order were not vague in that on page 65 of the exhibits that they be immediately returned to her pursuant to the parenting plan. The parenting plan did set out how to return the child and at minimum that was to drive them halfway point in Wisconsin. So the defendant had multiple dates. It did not say arrange or contact the mother. It said return the children. So drive them to that halfway point. If they're not there, the order also says have local police help. If she's not there to pick them up, now it's on her. But he did nothing. He took them to Wisconsin Dells instead which is not where he even said he was going to meet her with them. So he intentionally violated that order. He also kept them over the parenting plan time for considerable amounts of time, twice needing additional judicial intervention before the children were returned. Are there any other questions? I have no further questions. I have no questions. I have one question. Yes. The issue about whether it's a specific date or an ongoing offense, I noted that the defendant indicated there was no issue on the pleadings. Would that also waive any issue with respect to the indictment and the dates listed on the indictment? As far as not challenging them at an earlier? Yes, Your Honor. I mean, it's beyond a forfeiture. It's an overt waiver, is it not? It is, Your Honor. And I believe there was, and I don't, I wish I could remember which case it was, but it did talk about the difference between what is the actual date of the offense, the date he took the children, the date he didn't return the children, the date you had to get an order, an additional order to return the children, or the date that he actually returned the children. Or all of the above. Or all of the above. And that is, at least in Counts 2 and 3, it is the all of the above. We recognize that insofar as Count 2 mentions a specific date, that is also because we recognize that knowledge of the court order is necessary to intentionally revise it. And that's the date he was served. And that was the date he was served, which they conceded he was served. There is substantial evidence in the record that he was served, both from his own testimony that he started acting immediately to comply with the order, and you don't start immediately acting to comply with the order unless you know what the order is and that you have it. So his own testimony, his statements to Officer Meyer, which were established validly by a telephone conversation after acquired knowledge of him and the content of various conversations, those are admissible as statements by a party opponent, because the defendant is the party here. Based on that, Justice McClaren, anything else? No. Justice Shostak? We ask you to affirm the convictions and sentences. Thank you. Ms. Murphy, I understand you will do the reply? Yes. Your Honor, there's three points here in rebuttal. The first being the date issue that the State was discussing was not forfeited. We were raising in our opening brief reasonable doubt, and the reasonable doubt issue is never forfeited. Oh, that's kind of broad, isn't it? Everything should then fall under reasonable doubt. Your Honor, it is broad. However, there is the purpose of appeals. The State failed to prove him guilty beyond a reasonable doubt that cannot be forfeited. But you clearly put in your brief that you raised no issue on the pleadings. Your Honor, here the date issue, it's our position that it was not forfeited, because we agreed, we argued that the State, in our opening brief, failed to prove him guilty beyond a reasonable doubt because he did not intentionally violate the June 4th court order or intentionally failed to return the children on June 5th. And in the reply brief, I know you had met Justice, Your Honor, over here. I had mentioned that we spent a lot of time discussing the dates issue, and we were responding directly to the State's argument in their brief. And they cited, I believe, the case that counsel was looking for was people who grew up. So they raised it. Correct, Your Honor. We did, too, raise it when arguing beyond a reasonable doubt when we said he did not intentionally fail to return the children on 6-5. He intentionally or he did not intentionally violate a valid court order on 6-5. And, again, he did not intentionally fail to return the children on or about July 14th. Can intent be proven by circumstantial evidence? Your Honor, in a situation like this where it's involving minor children and the record does have some vague aspects to it, intent, this court should look at the intent element and look at the circumstantial evidence surrounding it. The second point here that I wanted to respond to that the State made was the fact that Tara, not using her text messages, or not using the text messages, I should say. I apologize. We can't use them because she wasn't impeached. However, regardless of that aspect of it, number one, the text messages are in evidence. We can look at the text messages that are in evidence,  And, as I stated, so how is it a error then if they were already admitted into evidence? It was just the fact that the trial judge specifically or trial court specifically stated that there was not enough evidence to show that Tara actually blocked Matthew. There was just differing text messages. So impeachment there was important, not only to impeach Tara as a credible witness and her statement that she did not block Matthew, but also it could have helped Matthew in the totality of the case. And Matthew immediately enlisted the help of local authorities to facilitate the returns of the children, which was consistent with the June 4th court order that he was served with on June 5th. And my final point, Your Honors, just to re-answer a question that Your Honor had asked in my opening argument, argument two was raised in a motion for a new trial, but we also, the defense also argued in our opening brief that trial counsel was also, in the alternative of finding the abusive discretion of the trial court, that trial counsel was ineffective for not laying the proper foundation. That was our alternative to that argument. If Your Honors do not have any further questions. Justice McClaren, do you have any further questions? No. Justice Shostak? Let me see real quickly. No, I have nothing further. All right. Well, again, we ask this court to reverse Matthew's convictions outline the alternative on the demand for a new trial. Thank you, Your Honors. Thank you. Thank you.